IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

## STATE OF TENNESSEE v. DARIN WOODS

**Appeal from the Criminal Court for Shelby County**
No. 14-03680        Paula L. Skahan, Judge

_____

### No. W2016-01486-CCA-R3-CD

_____

The defendant, Darin Woods, was indicted for attempted first degree murder (Count 1), aggravated robbery (Count 2), attempted aggravated robbery (Count 3), and employing a firearm during a dangerous felony (Count 4).  A jury convicted the defendant of the crimes as charged in Counts 2-4, but found him guilty of the lesser-included offense of attempted second degree murder in Count 1.  On appeal, the defendant challenges the sufficiency of the evidence supporting his attempted second degree murder conviction, arguing the State failed to prove he acted "knowingly" in shooting his victims.  The defendant also challenges the trial court's imposition of consecutive sentencing.  The State contends sufficient evidence exists to show the defendant "knowingly" shot his victims, and argues consecutive sentencing was warranted in this case.  After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Charles Gilchrist, Jr., Memphis, Tennessee, for the appellant, Darin Woods.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Stark and Sam Winnig, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On April 18, 2014, the defendant participated in the robbery of twin brothers, Devin and Dedrick Bradley.[1] In the course of the robbery, the defendant fired gunshots at both victims, shooting Devin in the back. For the crimes against Devin, the defendant was charged with attempted first degree murder, attempted aggravated robbery, and employing a firearm during a dangerous felony. For the crimes against Dedrick, the defendant was charged with aggravated robbery.

The above crimes occurred after a chance encounter between Dedrick and the defendant's cousin, Rodney Fleming, at the GameStop store located on Austin Peay Highway in Shelby County, Tennessee. Prior to the robbery and shooting, Dedrick asked Devin to drive him to GameStop so he could purchase a PlayStation 4. Devin agreed, but waited in the parking lot of the store while Dedrick went inside to make his purchase. Separately, but at the same time, Fleming entered GameStop. While Fleming was inside, the defendant and Sanders Malone, another cousin of the defendant, waited in the parking lot in Malone's grey Jeep.

Inside GameStop, Fleming learned Dedrick wanted to purchase a PlayStation 4, and offered to sell him one at a better price than the store. Fleming showed Dedrick pictures of the proposed PlayStation 4 on his cell phone, and Dedrick agreed to buy it and a television. The two men walked out of the store, and approached Malone's grey Jeep, along with Devin. Fleming told Malone to exchange cell phone numbers with Dedrick, and the two groups agreed to meet at the Raleigh Community Center in order to complete the transaction.

The Bradley brothers drove to the community center and waited for the defendant's group to arrive with the PlayStation 4 and television. Fifteen minutes later, Fleming called the brothers and asked them to meet him at Ashton Hills Apartments because "he couldn't fit everything in the car." The brothers saw Malone leaving in his grey Jeep as they entered the apartment complex. As the vehicles passed one another, Malone told the brothers Fleming and the defendant were "in the way back."

Once in the back of the apartment complex, the brothers got out of the car and approached Fleming. Devin noticed the defendant, wearing a hoodie, "sitting on a porch . . . just chilling." Fleming asked for the money for the PlayStation 4 and television, and Dedrick took $300.00 out of his pocket. As Dedrick removed the money from his pocket, the defendant pulled down his hoodie, and "upped the gun" on the brothers. Both Fleming and the defendant began telling the brothers to "drop it off," or to give them their money. While still pointing the gun at the brothers, the defendant "patted [Devin]

---

[1]Because the two victims share a common surname, we will refer to them by their first names. No disrespect is intended.

down," and demanded his car keys. Fleming told the brothers to lie on the ground, but the brothers refused. Instead, they ran in different directions, and the defendant began shooting at them. One of the bullets hit Devin in the back. At trial, Devin confirmed the defendant was the one who shot him, stating: "Sh\*\*, [the defendant] shot me. [The defendant] said drop it off. [The defendant] tried to take my car key."

After the shooting, the defendant and Fleming also ran. Clairketha Pruitt, the property manager at Ashton Hills Apartments, testified that she saw two men running on the property on April 18, 2014. One of the men got into a Jeep and drove away. The other man, Dedrick, asked her for help stating his brother had been shot.

Malone testified for the State at trial. His explanation of events corroborated the testimony of Dedrick and Devin. Specifically, he stated that he drove the defendant and Fleming to GameStop on April 18, 2014. He waited in his Jeep with the defendant, while Fleming went inside. Upon exiting the store, Fleming had "two guys" with him, and told Malone to exchange phone numbers with them. The two groups parted ways, and Fleming later asked Malone to drive him and the defendant to Ashton Hills Apartments. Fleming told Malone "he had a friend that lived in those apartments and they had the merchandise or whatever." Malone agreed, and dropped Fleming and the defendant off in the back of the apartment complex. As he was leaving the apartment complex, the Bradley brothers "flagged [him] down," and he told them Fleming and the defendant were in the back of the complex.

Malone testified that he heard gunfire before exiting the apartment complex. Moments later, he picked Fleming up in his Jeep, and saw the defendant jump over a fence. He asked Fleming to explain what happened, but Fleming was "real frustrated." Malone "got frantic" and called his mother. Later, the defendant, Malone, and Fleming reunited at the defendant's brother's house. Malone described the defendant as "nonchalant," whereas Fleming was "just furious." Malone stated Fleming yelled at the defendant saying, "you didn't have to shoot." At trial, Malone denied being part of a plan to rob the Bradleys, stating he was "really just a pawn in this situation."

Sergeant Marquis Collier and Officer Jason Parish investigated the robbery and shooting of the Bradley brothers. At the scene, Officer Parish photographed Devin's sweater, car keys, and a spent .9 millimeter Luger shell casings. Sergeant Collier worked to develop suspects in the case. He quickly learned Malone was involved in the incident after his mother, Juanita Peete, called police and "advised that her son . . . had called her in a frantic mode." Ms. Peete described Malone's grey Jeep to police "which matched the description of the vehicle involved in the [Bradley] incident." Ms. Peete confirmed this at trial, explaining she received a phone call from Malone wherein he "sounded scared," and she called the police. GameStop manager, Jason Weed, helped Sergeant

Collier identify Fleming as a suspect through surveillance video from the store. Finally, during an interview, Malone told Sergeant Collier "that the third suspect, third person that was with him was [the defendant]." After reviewing photo lineups, Devin identified the defendant as the person who shot him, and Dedrick identified Fleming as the person who robbed him. Malone also reviewed photo lineups and identified the defendant and Fleming as the two men he dropped off at the Ashton Hills Apartments on April 18, 2014.

The defendant testified at trial, denying his involvement in the robbery and shooting of the Bradley twins. He stated he did not remember where he was on April 18, 2014 "because [he] had had so much going in (*sic*) that month," though he remembered he was not in Memphis. He explained Malone is "[a] real close kin, cousin," and he did not know why Malone implicated him in the crimes. The defendant reasoned, "I guess he dislike me. I don't know. Something I did or something he didn't like, just to say my name." The defendant did not offer any additional proof.

The jury convicted the defendant as charged of aggravated robbery in Count 2, attempted aggravated robbery in Count 3, and employing a firearm during the commission of a dangerous felony in Count 4. In Count 1, the jury found the defendant guilty of the lesser-included offense of attempted second degree murder. The State moved for consecutive sentencing and filed a notice of enhancement factors with the court. Upon its consideration of the same, the trial court sentenced the defendant as a Range I, standard offender to an effective sentence of twenty-seven years in the Department of Correction. The court imposed consecutive sentences of eleven years for Count 1, ten years for Count 2, and six years for Count 4. The court sentenced the defendant to five years for Count 3, to run concurrently to the consecutive sentences imposed. This appeal followed.

On appeal, the defendant challenges the sufficiency of the evidence to support his conviction for the attempted second degree murder of Devin Bradley. The defendant argues the State failed to prove he "knowingly" shot Devin, claiming instead, "the proof presented by the State shows [the] [d]efendant recklessly fired shots toward Devin Bradley as Devin Bradley fled the scene of the aggravated robbery." The State maintains "[t]he evidence was sufficient to show that the defendant knowingly attempted to kill Devin Bradley and that he fired the gun intentionally." In addition, the defendant argues the trial court's imposition of consecutive sentencing was unjust and resulted in a sentence "greater than deserved." The State, however, asserts consecutive sentencing is warranted "based on the defendant's extensive history of criminal conduct." After our review, we agree with the State.

## ANALYSIS

*I.      Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)).  "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).  The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to

- 5 -

witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "In order to convict a defendant of attempted second degree murder, the state is required to prove that the defendant acted with the intent to cause the knowing killing of another, believing his conduct would cause the result without further conduct on his part." *State v. Inlow*, 52 S.W.3d 101, 104 (Tenn. Crim. App. 2000); Tenn. Code Ann. §§ 39-12-101(a)(2) and 39-13-210(a). Whether a defendant acted "knowingly" is a question of fact for the jury. *Id.* at 104-105. In assessing the defendant's intent, the jury may rely on "the character of the assault, the nature of the act and [on] all the circumstances of the case in evidence." *Id.* at 105 (citing *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)).

Here, the defendant argues the State failed to prove he acted "knowingly" when he shot Devin in the back during the robbery. The evidence produced at trial, however, shows otherwise. Both Devin and Dedrick explained they were lured to the Ashton Hills Apartments under the pretext of buying a PlayStation 4 and a television. When the pair arrived at the apartments to complete the transaction, the defendant pointed a gun at them and demanded their money. While still pointing a gun at the brothers, the defendant demanded Devin's car keys and, along with Fleming, ordered the two to "get on the ground." The brothers refused and as they ran, the defendant fired gunshots in their direction. One of the bullets hit Devin in the back. Based on this evidence, the jury was at liberty to infer the defendant knew that firing a gun in the direction of the brothers as they attempted to escape the robbery could have resulted in their deaths. *Inlow*, 52 S.W.3d at 105. Viewing the evidence in the light most favorable to the State, sufficient evidence exists to show the defendant "knowingly" shot Devin after robbing him at gunpoint. The defendant is not entitled to relief on this issue.

## II. *Consecutive Sentencing*

Next, the defendant challenges the trial court's imposition of consecutive sentencing for his attempted second degree murder conviction, asking this Court to order the eleven-year sentence for the conviction to be served concurrently to the ten-year

sentence imposed for the aggravated robbery conviction. This Court reviews within-range sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Further, in order to comply with the Sentencing Act, the trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. Thus, a sentence imposed by a trial court "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10; *State v. Pollard*, 432 S.W.3d 851, 859-60 (Tenn. 2013) (applying the abuse of discretion standard with a presumption of reasonableness to consecutive sentencing).

It is well settled that the trial court "may order sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the statutory criteria exists." *State v. Black*, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Pursuant to statute, consecutive sentencing is warranted when "[t]he defendant is an offender whose record of criminal activity is extensive[,]" and if "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2), (b)(4). In imposing consecutive sentences, it is necessary that "the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn.1995); *see also State v. Lane*, 3 S.W.3d 456, 461 (Tenn.1999) (stating that the *Wilkerson* findings that the sentences are necessary to protect the public and reasonably relate to the severity of the offenses apply only to consecutive sentences involving dangerous offenders).

Here, the trial court found the defendant was eligible for consecutive sentencing based upon his extensive criminal history and its determination that the defendant is a "dangerous offender." Tenn. Code Ann. § 40-35-115(b)(2), (b)(4). The trial court explained:

> I do find Mr. Woods does have an extensive record of criminal activity, even at his young age. I do find him to be a dangerous offender, based on his prior conviction of criminal attempt, car-jacking, where he violated that diversion, by picking up a weapons offense. I do find him to be a dangerous offender, by this case. The circumstances surrounding the

commission of this offense are aggravated, to lure two young men to an apartment complex on the premise that they would be able to buy some video games, for a lesser price and for Mr. Woods to pull a gun out on them and rob them and then tell them to lay down on the ground and get their keys. As they are fleeing for their lives to shoot, at least twice, I forgot how many times it was, shooting Devin Bradley, once in the back.

. . .

So the circumstances surrounding the commission of the offense, are aggravated. And the aggregate length of the sentence is it reasonably relates to the offense of which the defendant - the offenses for which the defendant stands convicted.

In finding the defendant eligible for consecutive sentencing, the court noted that the defendant robbed the Bradley brothers at gunpoint and fired multiple shots at them as they attempted to escape. The court found the circumstances of the offenses to be aggravated and stated the length of the sentence reasonably related to the offenses for which the defendant was convicted. Accordingly, we conclude the criteria relied upon by the trial court are explicit in the record and support the court's consecutive sentencing as to the defendant's attempted second degree murder conviction. The trial court did not abuse its discretion in imposing consecutive sentences for the convicted offenses, and we affirm the trial court's sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE